## BUTLER *v.* KAVANAUGH.

### Opinion delivered April 1, 1912.

1.  STATUTES—MODE OF PASSAGE.—The provision of Const. 1874, art. 5, 22, that: "No bill shall become a law unless, on its final passage the vote be taken by yeas and nays; the names of the persons voting for and against the same be entered on the journal; and a majority of each house be recorded thereon as voting in its favor"—is mandatory, and must be observed by both houses of the Legislature in the passage of a bill. (Page 110.)

2.  SAME—PRESUMPTION OF PASSAGE OF ACT.—An act of the Legislature duly signed by the Governor, deposited with the Secretary of State, and published as a law, is presumed, in the absence of a showing to the

contrary, to have been passed in compliance with the rules of the Legislature, but the journal can be looked to for the purpose of determining whether the requirements of the Constitution have been complied with. (Page 111.)

3. SAME—PASSAGE—EVIDENCE.—Where the Senate Journal shows that "House Bill No. 389" was passed by the Senate on a certain day, but the House Journal shows that "House Bill No. 389" was defeated in the House, but that House Bill No. 398 was passed by the House, and indorsements on it show that it was passed by the Senate on the above date, and such bill was duly approved by the Governor, it will be presumed that the number of the bill shown in the Senate Journal was a clerical misprision, and that House Bill No. 398 was properly passed. (Page 111.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The provision of art. 5, § 22, of the Constitution was never legally complied with, and the act never became a law. The Constitution is mandatory. 27 Ark. 279; 33 *Id.* 17; 61 *Id.* 232; 40 *Id.* 200, 212; 19 *Id.* 250. The journal entries are the exclusive evidence of whether the bill was passed.

*Coleman & Lewis,* for appellee.

1. The question of the existence or nonexistence of a law is a judicial one. It is a question of law. 94 U. S. 260; 34 Ark. 283. In determining this question the courts take judicial knowledge of the journals. 19 Ark. 250; 32 *Id.* 515; 34 *Id.* 283; 83 *Id.* 448, 465; 90 *Id.* 174. The presumption is that the law was constitutionally passed. 90 Ark. 174, 603; 34 *Id.* 284; 51 *Id.* 566.

2. The journals show a strict compliance with the law except a clerical error in the number of the bill, which was obviated by the indorsements on the bill. 44 Ark. 549; 27 *Id.* 279; 28 *Id.* 317; 34 *Id.* 284; 32 *Id.* 518; 103 U. S. 691. Courts will look to the original bill to settle the fact of the passage of same. 32 Ark. 414; 34 *Id.* 362; 6 Wall (U. S.) 499; 40 *Id.* 211. The identity of the bill was fully established. 44 Ark. 549; 103 U. S. 691.

MCCULLOCH, C. J. The Constitution (sec. 22, art. 5) provides that "no bill shall become a law unless, on its final passage, the vote be taken by yeas and nays; the names of

the persons voting for and against the same be entered on the journal; and a majority of each house be recorded thereon as voting in its favor."

This proceeding challenges the legal passage of the bill for an act of the General Assembly of 1907 laying off an improvement district in Pulaski County "for the drainage of certain portions of the Fourche bottoms and contiguous territory," and it is claimed that the journal of the Senate fails to show compliance with the above-quoted provision of the Constitution. Acts 1907, c. 420.

The provision is mandatory, and must be observed by both houses in the passage of a bill; otherwise the statute is illegal and void. *Smithee* v. *Garth*, 33 Ark. 17; *Chicot County* v. *Davies*, 40 Ark. 200; *State* v. *Corbett*, 61 Ark. .226; *Rogers* v. *State*, 72 Ark. 565; *State* v. *Bowman*, 90 Ark. 174; *Pelt* v. *Payne*, 90 Ark. 600.

This court has steadily adhered to its position, taken many years ago, that an act of the Legislature, duly signed by the Governor, deposited with the Secretary of State, and published as a law, is presumed, in the absence of a showing to the contrary, to have been passed in compliance with the rules of the Legislature, but the journals can be looked to for the purpose of determining whether or not the constitutional requirement with respect to recording the vote thereon has been complied with. See cases *supra*.

The legislative history of the bill in question is that it was introduced in the House as House Bill No. 398, and that it duly passed that body, the journals properly showing the ayes and noes votes recorded on its passage. It was transmitted to the Senate, and the following entry appears as of May 7, 1907, on the Senate Journal:

"House Bill No. 398, entitled 'An act to be entitled an act to create, lay off and establish a drainage and levee district in Pulaski County, Arkansas, to be known as the Fourche Drainage District, for the drainage of certain portions of the Fourche bottom and contiguous territory in said district, to create a board of directors for said district, and for other purposes,' was read the first time, rules suspended and read the second time and made a special order for tomorrow at 2 P. M."

The following entries appear as of May 8, 1907, on said journal.

"At 12 o'clock the Senate, on motion, took a recess until 2 P. M."

"Senate called to order after recess."

"A quorum present."

"House Bill No. 389, being a special order for this hour, was read the third time."

"The question being, Shall the bill pass? the secretary called the roll, and the following voted in the affirmative:" (Here follow the names of the senators, showing a majority voting in the affirmative.)

"In the negative, none."

"Absent and not voting:" (Here follow the names of senators.)

"So House Bill No. 389 passed."

The original bill, which is now on file in the office of the Secretary of State with other legislative proceedings, shows the following indorsements thereon:

"H. B. No. 398—Pugh.

"4-8-1907—Read first time, rules suspended and read the second time.          "Ed. L. Lucas, Chief Clerk.

"April 24, 1907—Read third time, and passed.
            "Ed. L. Lucas, Chief Clerk.

"April 25, 1907—Received from House.

"May 7, 1907—Read first time, rules suspended and read second time.   S. O. for 5-8, 2 p. m.
            "Geo. H. Trevathan, Secretary.

"May 8, 1907—Read third time and passed.
            "Geo. H. Trevathan, Secretary.

"May 10, 1907—Received from Senate.
            "Ed L. Lucas, Chief Clerk.

"Presented to the Governor at 3:30 P. M. May 28, 1907.
            "W. E. Simpson,
            "Chairman Enrolling Committee."

The original bill is also signed by the Speaker of the House of Representatives and the President of the Senate, and the approval of the Governor is indorsed thereon.

The journals of the House recite that on May 10, 1907, the bill was duly reported to that body as having passed the

Senate. The journals of the House show that House Bill No. 389 covered another subject, and that it was defeated in the House, and was never transmitted to the Senate.

Now, the question is not so much whether, upon final passage of the bill, the ayes and noes were recorded on the journal of the Senate, for the journal shows that was done as to a certain bill which had been made special order for that day and hour, but it is a question of identifying by the record the particular bill which the journal shows was then passed. That must be proved by the record, but the whole record may be looked to in order to ascertain the history of the passage of the bill.

"The enrollment is a solemn record," said Judge SMITH for the court in *Chicot County* v. *Davies, supra,* "and the existence of the act is to be tried by the record, and is not to depend on the uncertainty of parol proof, or upon anything extrinsic to the law and the authenticated recorded proceedings in passing it."

The Secretary of State is required by statute to receive from the secretary of the Senate and the clerk of the House of Representatives "all of the records, books, papers and rolls of the General Assembly, and file the same as records of his office (section 3351, Kirby's Digest), there to be kept as evidence of the facts of which they testify. Those records must be examined and considered along with the journals of each House in determining whether or not a bill has properly passed both houses. *Rogers* v. *State, supra.* An examination and consideration of all the records, which are thus open to our inspection, pertaining to the passage of the bill in question, makes its identity perfectly plain as the one the passage of which the Senate journals of May 8, 1907, duly record. It is evident that the number mentioned as 389, instead of 398, as it should have been, was merely a clerical error, which is plainly established by other portions of the record and should be disregarded. *Worthen* v. *Badgett,* 32 Ark. 496. We do not mean to hold that a record entry on the legislative journals can be contradicted by indorsements made on the original bill by an officer of either of the houses, but we consider those indorsements, together with all other records concerning the passage of the bill through the two houses, for the purpose of identifying it as the one which passed. The bill in question

was, according to the legislative records, duly passed, and the chancellor was correct in so holding.

Judgment affirmed.