NIVEN v. ROAD IMPROVEMENT DISTRICT No. 14
OF JEFFERSON COUNTY.

Opinion delivered February 4, 1918.

1. STATUTES — ENACTMENT — CONSTITUTIONAL REQUIREMENTS—JOURNAL ENTRY.—In order for the proper passage of an act by the Legislature, the Constitution requires not merely that the yeas and nays shall be taken on the final passage of the bill, but it is also required that the same shall be entered on the journal, thus making the journal entry the sole evidence of the proceedings.

2. STATUTES—ENACTMENT — JOURNAL ENTRY — CONSTITUTIONAL REQUIREMENT—PROOF.—The determination whether a legislative enactment was properly passed by a yea and nay vote, as required by the Constitution, can be had only from the journal of each house itself.

3. IMPROVEMENT DISTRICTS—VALIDITY—ACT NO. 116, ACTS OF 1917.—Act No. 116, Acts of 1917, held not properly passed and to be invalid.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed.

*Rowell & Alexander,* for appellant.

1. The act is void. The bill was not read for the third time and the vote was not taken by yeas and nays, nor entered of record in the journal. Only the journal as filed with the Secretary of State can be looked to. Const. Art. 5 § 21. 33 Ark. 17. The memoranda and minutes of the officers can not be considered but only the journal. 160 Ala. 181; 119 *Id.* 487; 76 Atl. 370; 90 Ark. 174.

*Caldwell & Triplett,* for appellees.

1. The Senate journal does not show the final passage of the act nor the aye and nay vote. The provision of the Constitution is mandatory. 61 Ark. 226. The courts not only look to the journal but to the records of the Secretary of State. 72 Ark. 565; 83 *Id.* 448; 103 *Id.* 109; 108 *Id.* 184; 110 *Id.* 269. Also to the endorsements upon the original bill. 103 Ark. 109; 110 *Id.* 269. Where there is a variance between the journal and the manuscripts from which it is prepared, the manuscripts will prevail. 40 Ark. 200; 110 *Id.* 269. Courts will not

allow an act to fail because of mere clerical misprison. 34 Ark. 263; 40 *Id.* 200; 51 *Id.* 559; 103 *Id.* 109; 110 *Id.* 269; 104 *Id.* 16.    They correct mere errors.  · 104 Ark. 16; 34 *Id.* 263-8.

The original manuscripts, minutes and endorsements constitute the real journal and these all show that the act was duly passed.  It is on file in the office of the Secretary of State, duly signed and published.  The act was duly passed and is valid.    34 Ark. 283; 110 *Id.* 269; 44 *Id.* 536; 32 *Id.* 414, 496; 86 *Id.* 69-75; 90 *Id.* 174; 40 *Id.* 200; 83 *Id.* 448; 72 *Id.* 563; 103 *Id.* 109; etc.

The manuscripts prevail over the journal where there is a variance.

McCULLOCH, C. J.   In this case there is an attack upon the validity of an improvement district on the ground that the special statute creating the district* was not enacted by the General Assembly in the manner prescribed by the Constitution, in that on the final passage of the bill in the Senate the vote was not taken by yeas and nays and the names of those voting for or against the measure entered on the journal.

The Constitution provides that "no bill shall become a law unless on its final passage the vote be taken by yeas and nays, the names of the persons voting for and against the same be entered on the journal, and a majority of each house be recorded thereon as voting in its favor.   Art. V, Sec. 21.   In another section of the same article (Sec. 11), it is provided that each house "shall keep a journal of its proceedings; and from time to time publish the same."   It has been repeatedly decided by this court that the constitutional provision quoted above is mandatory and that the omission on the part of the law makers to comply with the same is fatal to the validity of a statute.  *Vinsant* v. *Knox,* 27 Ark. 278; *Smithee* v. *Garth,* 33 Ark. 17.   In *Smithee* v. *Garth, supra,* the court, in construing an identical provision of the Constitution of 1868, said:   "But whatever may

*Act 116, Vol. 1, p. 601 session Laws of 1917.—(Reporter).

have been the circumstances attending the supposed passage of the bill, it becomes our duty to hold the legislative department to a strict compliance with a mandatory provision of the Constitution, which in every case on the final passage of a bill, requires that the vote be taken by yeas and nays, and entered upon the journal. Manifestly the object of recording the yeas and nays is not to show that a quorum of the members of the House is present, or that a majority votes for the bill. The journal may show that there was a call of the House before the final vote on the passage of the bill was taken, and that a quorum was present, and indeed all the members present, and the journal may also state that a majority voted for the bill; yet if the yeas and nays be not entered on the journal, the requirement of the Constitution is not complied with, and the bill does not become a law. The Constitution says the yeas and nays shall be entered on the journal; and we have no right to say that this need not be done, or that half compliance is sufficient. It is not sufficient to enter the yeas and omit the nays, nor to enter the nays and omit the yeas, and in all cases the names of those voting in the affirmative and negative must necessarily be entered on the journal."

(1-2) It will be observed that the constitutional requirement is not merely that the yeas and nays shall be taken on the final passage of the bill, but it is also required that the same be "entered on the journal," thus making the journal entry the sole evidence of the proceedings. But the particular controversy in this case arises over the question as to what constitutes the journal, and whether the journal proper may be supplemented by other records in order to show that the yea and nay vote was taken on the final passage of the bill.

It appears from the testimony of the secretary of the Senate that written minutes or memoranda of the daily proceedings were taken by him and his assistants. The journal clerk also kept minutes from which the permanent journal was made up. The secretary himself

kept minutes of the votes by yeas and nays on the final passage of bills, and he kept this on the regular printed roll call slips containing the names of the members checked off so as to indicate the vote of each on the passage of the bill, and that when the vote was completed he handed this roll call list to the journal clerk who attached it to his minutes. The minutes of the journal clerk showed the vote on the final passage of the bill, and the yea and nay vote, but the minutes of the secretary of the Senate showed only that the bill had been passed, without giving the vote by yeas and nays. The minutes kept by the secretary of the Senate were filed with the Secretary of State and are on file there now, but they are not authenticated either by the certificate of the secretary of the Senate or the presiding officer. The minutes kept by the journal clerk have not been preserved. It is conceded that the journal book now on file with the Secretary of State does not show the final passage of this bill, but the witnesses testify that the daily minutes of the journal clerk from which the journals were finally made up did contain the printed slip showing the roll call on the vote on the final passage of this bill. The Secretary of the Senate testified that he also made up the manuscript for the printed journals, now in the hands of the printer, and that the final passage of the bill, and the record of the yea and nay vote thereon was shown. There is, therefore, no record in the office of the Secretary of State containing an entry of the yeas and nays on the final passage of this bill.

It is contended that the original minutes or memoranda kept by the journal clerk ought to be treated as a part of the journal which shows compliance with the statutory requirement, and that the loss of those minutes or the failure to preserve the same ought not to invalidate the statute. The framers of the Constitution requiring that each House of the General Assembly should keep a journal of its proceedings, used that term in its ordinary sense to mean a permanent record, which we

judicially know has been regularly complied with by each House in the past, and this being true, the daily minutes or memoranda are merely temporary and do not constitute a part of the permanent record designated as the journal. The argument might be sound if we were dealing merely with the question of evidence such as we had in the case of *Butler* v. *Kavanaugh,* 103 Ark. 109, and *Mechanics Building & Loan Assn.* v. *Coffman,* 110 Ark. 269, where we considered endorsements on the bills and other entries for the purpose of identifying the particular measure under consideration or the legislative steps that were being taken. In the Coffman case the question was whether those endorsements might be considered in determining whether the vote recorded on the journal was on the adoption of an amendment or on the final passage of the bill. Here we are not dealing with matters of evidence in identification of the proceedings, but we are to determine whether the plain provision of the Constitution has, according to the sole evidence authorized by the Constitution, been complied with, and in this matter we must follow as our guide the language of the Constitution, and it does not admit of a construction that the entry of the yea and nay vote anywhere except on the journal itself is sufficient. The daily minutes kept by the Secretary of the Senate or the journal clerk from which the permanent record is finally made up does not constitute a part of the journal within the meaning of the Constitution, and the entry there of the final vote is not sufficient. The statute provides that when the daily proceedings are made up in manuscript form and signed by the presiding officer, and attested by the secretary, they shall be filed in the office of the Secretary of State, in addition to the journal. Kirby's Digest, § 3738. That statute does not make the daily record a part of the journal. On the contrary, it presupposed that a permanent journal will also be kept and preserved in compliance with the requirement of the Constitution.

(3)   It follows from what we have said that the statute creating the district was not legally passed, and that the proceedings thereunder are void.   The decree is, therefore, reversed and the cause remanded with directions to enter decree in accordance with this opinion.

HUMPHREYS, J., not participating.