RUDDELL *v.* GRAY.

Opinion delivered June 28, 1926.

1. EVIDENCE—JUDICIAL NOTICE OF LEGISLATIVE RECORDS.—The Supreme Court will take judicial knowledge of legislative records, regardless of any agreement of the parties concerning same.

2. STATUTES—CONFLICT BETWEEN JOURNAL AND PRINTED RECORD.— Where there is a conflict between the journal of one of the branches of the Legislature and the printed record thereof, the former will prevail.

3. STATUTES—VOTE ON BILL.—The House journal showing that 73 voted for a bill and 4 against, naming them, the fact that there is a discrepancy as to the number of absentees does not invalidate the bill, as the Constitution does not require the names of absentees to be recorded.

4. EVIDENCE—PRESUMPTION OF REGULARITY.—It will be presumed that legislative officers complied with constitutional requirements unless the contrary affirmatively appears.

5. STATUTES—PRESUMPTION AS TO PASSAGE.—An enrolled bill, signed by the Governor and deposited with the Secretary of State, raises a conclusive presumption that every requirement has been complied with, unless the contrary conclusively appears from the records of the General Assembly.

6. BRIDGES—NOTICE OF PETITION OF LANDOWNERS—EFFECT OF MISTAKE.—A mistake of the commissioners of a bridge district in allowing the notice of the hearing of the property owners to state that the petition contained a majority in value and numbers of the landowners, that being the question to be determined at such hearing, *held* not to affect the validity of the proceedings, where a hearing was had at the time and place specified, and a finding made that a majority had signed the petition.

Appeal from Independence Chancery Court; *Lyman F. Reeder*, Chancellor; affirmed.

*John E. Miller, Culbert L. Pearce* and *Ben B. Williamson,* for appellant.

*Ernest Neill, S. M. Bone* and *S. M. Casey,* for appellee.

McCULLOCH, C. J. Appellees are commissioners of an improvement district, created by a statute enacted by the General Assembly of 1925 (Acts 1925, p. 977) for the purpose of constructing a bridge across White River, near the city of Batesville, in Independence County, and this action was instituted against them in the chancery court of Independence County by appellant, the owner of real property in the district, to restrain proceedings by the commissioners. One of the grounds for relief is that the statute was not legally enacted and is void, and the other ground is that the commissioners failed to give proper notice of the filing of the petition of property owners, which is a prerequisite to operations under the statute. Appellees filed an answer, and the cause was heard upon the pleadings and an agreed statement of facts, and the chancery court decided against appellant, and dismissed the complaint for want of equity.

The agreed statement of facts related, in part, to the condition of the legislative records concerning the enactment of the statute, but we can only treat this agreement as informatory of the condition of the record, for we are bound to take judicial knowledge of the record, regardless of any agreement of the parties concerning the same. *Booe* v. *Road Improvement District No. 4 of Prairie County,* 141 Ark. 140.

The first contention with reference to the invalidity in the enactment of the statute is a discrepancy in the journal entries with regard to the vote on the final passage of the bill in the House of Representatives. There is a slight variance between the journal entry itself and the printed record thereof, but each shows a majority in favor of the passage of the bill. Wherever a conflict between the two records appears we must look to the entries upon the journals themselves rather than to the printed record in order to determine the true condition.

The bill for this statute originated in the House of Representatives, and was voted on and passed by the house on March 9, 1925. The entry on the journal recites that the clerk called the roll, and that 73 members (naming them) voted in the affirmative; that 4 members (naming them) voted in the negative, and that 21 Representatives (naming them) were absent. This accounted for only 98 Representatives, leaving two unaccounted for, and it is contended that this constitutes a failure to comply with the constitutional requirement that "no bill shall become a law unless, on its final passage, the vote be taken by yeas and nays, the names of the persons voting for and against the same be entered on the journal, and a majority of each house be recorded thereon as voting in its favor." Article 5, § 22. It will be observed that there is no requirement in the Constitution that the names of absentees shall be recorded, the only requirement being that "the names of the persons voting for and against the same be entered on the journal." We cannot assume that there was a failure to record the names of any member voting, for the names of those voting on the bill were stated in the record, and, since there is no constitutional requirement for recording the names of the absentees, we must indulge the presumption that a clerical error occurred in recording the names of the absentees. The presumption that the officers performed their duties, until the contrary appears, must be indulged with reference to legislative compliance with the constitutional requirements, and it is our duty to uphold the enactment unless it affirmatively appears that the constitutional requirements were not complied with. Hence we must indulge the presumption, as before stated, that a clerical error occurred in recording the names of the absentees and not in recording the names of those who were present and voting.

There is an attack on the validity of the statute in an attempt to impeach the recitals of the journal by showing that the entry reciting the final passage of the bill

on its return from the Senate with an amendment was false. After the passage of the bill in the House on March 9, 1925, it was sent to the Senate, and passed there after the adoption of an amendment. The House adjourned on March 12, and the records recite a vote by yeas and nays on the passage of the amended bill—a large majority of the House voting yea. Appellant offered oral testimony to the effect that this entry was false, that the bill was not called up in the House at all after its return from the Senate, and that there was never any concurrence in the Senate amendment, but that, on the contrary, the entry on the journal was ordered by the Speaker several days after the adjournment of the House. The chancery court was correct in disregarding this testimony, for legislative enactments cannot be attacked in this manner. It has been repeatedly decided by this court that an enrolled statute, signed by the Governor and deposited with the Secretary of State, raises the presumption that every requirement was complied with, unless the contrary affirmatively appears from the records of the General Assembly, and that this presumption is conclusive, "unless the records, of which the court can take judicial knowledge, show to the contrary." *State* v. *Crowe,* 130 Ark. 272, 197 S. W. 4; *Harrington* v. *White,* 131 Ark. 291, 199 S. W. 92; *Perry* v. *State,* 139 Ark. 227, 214 S. W. 2; *Booe* v. *Sims,* 139 Ark. 595, 215 S. W. 659; *Road Imp. District* v. *Sale,* 154 Ark. 551, 243 S. W. 825. In *Booe* v. *Sims, supra,* we said: "In determining whether an act has been properly passed by both houses of the General Assembly, the court will not look beyond the records, books, papers and rolls of the General Assembly and the journals of each house required to be kept by the Secretary of State." The journals of the Legislature cannot be impeached by oral testimony, for the reason that there is a conclusive presumption arising from the enrolled bill signed by the Governor, which can only be overcome by affirmative recitals of the record. It would be disastrous to hold otherwise and to permit the validity of a statute to depend on oral testimony as to

the correctness of the journal entries of the Legislature. Our conclusion is that the statute cannot be successfully impeached in this manner, and that, in accordance with the records, of which we take notice, the statute was properly enacted.

There remains only for discussion the question of the attack upon the proceedings on account of alleged irregularity in the notice given by the commissioners. Section 7 provides, in substance, that the provisions of the statute can only be put into operation by petition or vote of a majority in value and numbers of the owners of real property in the district; that, if a petition purporting to be signed by a majority of the owners of property be filed with the commissioners, they shall "give public notice of such facts in at least one weekly newspaper and in two issues thereof, published in Batesville, Arkansas, and set a day and place for the hearing, not less than twenty days after the first publication of said notice, and at said place and time the commissioners shall examine the petitions filed, together with the county assessment list of the lands in said district, for the year of 1924, and shall continue said hearing from day to day until completed, and shall determine whether those signing such petition constitute a majority in numbers and in value of the owners of lands in said district. The statute further provides that, if the commissioners find that the petition or petitions have been signed by the requisite majority, they shall so declare, and that public notice of the finding shall be given in at least one weekly newspaper for one issue published in Batesville, and that the findings shall be conclusive unless suit to invalidate the findings shall be commenced in the chancery court within twenty days.

It will be observed from the narrative of the requirements of the statute that, when a petition is filed, the commissioners must name a day to hear protests, and publish a notice thereof, and that, on the day named, if they find that the petition contains a majority, they shall so declare, and publish a notice to that effect. Now, it

is alleged and shown in this case that the first notice published by the commissioners contained a declaration of findings that the petition contained a majority.    It is the contention of appellant that this invalidated the notice.    It is true that the commissioners had no power to make a finding on the question of majority until the day set for hearing, and the declaration contained in the notice was premature, but it does not affect the validity of the proceedings, which are otherwise in compliance with the statute.    The notice gave information as to the time and place and purpose of the hearing, which was held on the day named in the notice, and the declaration was then made and published as to a majority having signed the petition.    The mistake in making the premature declaration did not impair the rights of property owners with respect to being given a hearing on the question whether or not a majority had signed the petition.

All of the attacks on the validity of the statute and the proceedings thereunder are unfounded, and the chancery court was correct in its decision.

Affirmed.