WHALEY *v.* INDEPENDENCE COUNTY.

4-8351                                      205 S. W. 2d 861

Opinion delivered November 17, 1947.

Rehearing denied December 15, 1947.

*R. W. Tucker* and *W. D. Murphy, Jr.,* for appellant.

*Millard Hardin, M. F. Highsmith* and *W. M. Thompson,* for appellee.

GRIFFIN SMITH, Chief Justice. In sustaining the judgment—which we do—it is necessary to hold that where records made by separate coordinate departments of the State government are in conflict in circumstances where neither department is required, by express language of the Constitution, to include or exclude a particular method, the dignity of one is not superior to that of the other; hence, in resolving differences, effect must be given to the act or transaction most strongly supported by accepted presumptions of verity.

In 1936 Independence County adopted Initiated Act No. 3, fixing salaries of its officers. House Bill No. 306— later Act 430 of the Fifty-Sixth General Assembly—if effective, and if constitutionally capable of accomplishing the purpose intended,—would repeal the Initiated Act, with the result that general salary laws would apply to Independence County.

Appellant is Tax Assessor and filed salary claims, contending compensation was payable under Act 223, approved March 18, 1947. County Court disallowed, and on appeal Circuit Court did likewise. The question is whether the Governor in vetoing Act 430 exercised an existing authority.

It is conceded that House Bill 306 was adopted by the Senate and House by votes greater than two-thirds of each body. On March 5, 1947, when Senate formalities had been completed and the bill sent back to the House,

the chairman of the committee on enrolled bills reported that the measure had been delivered to the Governor at 2:00 o'clock p. m. This is reflected by an entry in the House journal. The General Assembly adjourned March 13. An indorsement on the wrapper of the bill shows it was in the hands of the Chief Clerk of the House March 6th, for enrollment. This information is followed by the writing, "Delivered to the Governor. H. M. McCastlain, Chief Clerk". Date of this memorandum of delivery is not shown unless it be assumed that the rubber-stamped "March 6" following reference to enrollment was intended.

March 28th the Governor sent the bill to the Secretary of State, with a veto message.

Article VI, Sec. 15, of the Constitution, deals with duty of the General Assembly to transmit all bills to the Governor for his approval or disapproval. If during a legislative session a bill presented to the Governor is not returned within five days (Sunday excepted) it shall become a law "in like manner as if he had signed it", unless by adjournment the Assembly prevents such return. In case of adjournment the bill becomes a law unless within twenty days after adjournment the Governor shall file it in the office of the Secretary of State, accompanied by his objections, and give notice thereof by public proclamation.

If the Governor received the bill March 5th or 6th, he had more than five days before the Assembly adjourned, and his failure to return it within the constitutional period would prevent effective veto at a later time. On the contrary, if the bill reached the Governor's office March 10, he had twenty days after March 13th within which to act.

House Resolution No. 20, adopted in February 1947, contains a requirement that all bills originating in that body and received from the Senate upon which action in both branches has been completed shall be transmitted to the Governor the same day received.

When effectiveness of the veto was questioned, the Journal Committee, composed of five members, made an investigation of records relating to the alleged delivery of March 5th. Among those interrogated was Miss Beth Riley, House Enrolling Clerk, who testified that she delivered House Bill No. 306 to Mrs. Helen James of the Governor's office March 10th. Mrs. James verified this date of delivery and identified the original receipt she issued at that time, and a carbon copy retained in the executive office.

From all of the evidence before it, the Journal Committee concluded, and so reported to the Secretary of State April 18th, that the bill in question was not delivered to the Governor until March 10.

But, it is insisted, this oral testimony, given before the Committee and heard by Circuit Court, was inadmissible to impeach recitals of the Journal; and so it was. Nor is it essential that we determine whether the Committee had power at that late date to correct Journal entries made prior to adjournment of the lawmaking body.

Attention is called to pertinent expressions in such cases as *State Fair Association* v. *Hodges,* 120 Ark. 131, 178 S. W. 936, Ann. Cas. 1917C, 829; *Rice* v. *Lonoke-Cabot Road Improvement District No. 11,* 142 Ark. 454, 221 S. W. 179; *Niven* v. *Road Improvement District No. 14,* 132 Ark. 240, 200 S. W. 997; *Ruddell* v. *Gray,* 171 Ark. 547, 285 S. W. 2; *Booe* v. *Road Improvement District No. 4,* 141 Ark. 140, 216 S. W. 500, and others dealing with the conclusive verity to be accorded journal entries.

Argument is that weight of authority for the proposition advanced by appellant precludes judicial consideration of any act, circumstance, or event, however closely related to the subject matter, unless shown by Journal entries. It is insisted that when we reach the certified photostat showing action of Chairman Plunkett of the Committee on Enrolled Bills (who reported that on March

5th he delivered House Bill No. 306 to the Governor)[1] all inquiry must end. It is urged that the Journal entry of this report, whether true or false, whether induced by fraud, occasioned by error, or brought about by failure of mechanical precision or want of personal accuracy— that whatever the reason may have been, and irrespective of the true status, the Journal must be taken at full face value and its recitals accepted as a constitutionally-erected wall barring further investigation, and perpetuating what all men might agree was patent error.

We do not think the cases go to such an extent.

It is true that in the case of *Rice* against *Road District* a Governor's receipt evidencing delivery of a legislative bill had been given, but the date of delivery, as stated in the opinion by Mr. Justice HUMPHREYS, was not shown. A question there was which of two bills was valid. Three Judges did not agree with all that was said in the prevailing opinion, Chief Justice MCCULLOCH and Mr. Justice HART having written separate dissents, while a third Judge concurred in the majority holding. In the majority opinion it was said 142 Ark. 454, 221 S. W. 180: "The only effect resulting from the unauthorized approval of the bill by the Governor was to corroborate the presumption that it was presented to him. In other words, . . . approval . . . lends credence to the presumption that the Enrolling Committee performed its duty by presenting the bill to him within the time required by law."

A review of our cases shows there has been no deviation from the rule that conclusive verity must be given Journal entries in respect of those things required by the Constitution to be recorded.

A conflict between House and Senate Journals was presented in *Harrington* v. *White,* 131 Ark. 291, 199 S. W. 92. The Senate Journal did not show that four counties were included in a Senate-adopted amendment, hence

---

[1] It is conceded by all parties that if in fact the bill was not transmitted to the Governor on March 5th, no misrepresentation was intended. The Chairman was acting pursuant to custom. Under this theory the report was merely perfunctory, there having been no purpose to do other than deal with the bill as the House intended.

the question, What presumptive effect should the Court give in favor of regularity arising from the fact of the enrolled bill when signed by the Governor, "notwithstanding the silence of the Senate Journal on the subject of including these four counties in the exemption clause?"

An Act of the Legislature, says the opinion, when signed by the Governor and deposited with the Secretary of State, raises the presumption that every requirement was complied with, unless the contrary affirmatively appears from the records of the General Assembly. Mere silence of the Senate Journal is not sufficient to overcome the presumption". The opinion contains this significant statement: "The application of this rule is, of course, limited to those things which the Constitution does not require that the Journals of the respective Houses of the General Assembly shall show. The rule does apply, however, to a case like this where there is no constitutional requirement that the Journal shall recite the substance of an amendment". Effect was given the House Journal, containing affirmative recitals.

Here, appropriately emphasized, is a recognition that inviolable verity must attach to Journal entries as to all matters required by the Constitution to be recorded.

There is no requirement that the *date* a completed bill was delivered to the Governor be entered on the Journal.

When joint rules were adopted in 1947 it was provided that the Clerk of each branch should keep a "register", recording under appropriate headings the progress of bills from the time introduced "to the time of their transmission to the Governor". The Clerk was "also" required "to have the Journal of the House recorded in a well-bound book", and each day's proceedings signed by the Speaker and attested by the Clerk.

Whether the "register" referred to is identical with the Journal is not disclosed. The requirement of Art. V, Sec. 12, of the Constitution, is that "Each House shall

keep a Journal of its proceedings''. We are unable to say, as a matter of law, that ''register'' is synonymous with Journal; nor may we have recourse to extrinsic evidence. House Rules, Sec. 12, directs that when a bill has been signed by the Speaker and otherwise completed, ''It shall be delivered to the Governor by the Joint Committee on Enrolled Bills''. There is no requirement, however, that the date of delivery or the fact that there was delivery be recorded in the Journal. It follows that these rules are not clothed with that degree of constitutional sanctity preventing an examination of other records in quest for truth.

There is no distinction in degree between duties imposed upon the Governor under the Constitution and those inhering to the General Assembly when a bill has been completed by the lawmaking body. The measure has no force unless sent to the Executive in a timely manner. Once a bill is received by the Governor the legislative function is ended unless within the appropriate period before adjournment it is returned with a veto. Incidental matters relating to the manner of receiving the bill, who transmitted it, or what may have been said at the time—as to such things neither the Governor nor any of those attending him may testify in contradiction of official records. *Booe* v. *Road Improvement District*, 141 Ark. 140, 216 S. W. 500.

Certain language in *Road Improvement District No. 16* v. *Sale,* 154 Ark. 551, 243 S. W. 825, is emphasized in *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9. The opinion says: ''An enrolled statute signed by the Governor and deposited with the Secretary of State raises the presumption that every requirement was complied with, unless the contrary affirmatively appears from the records of the General Assembly, and . . . this presumption is conclusive unless the records, of which the Court can take judicial knowledge, show to the contrary''.

Under this holding we come directly to the issues presented in the case at bar, *i. e.,* May Journal recitals of a character not required by the Constitution to be made create a conclusive presumption that House Bill

No. 306 was sent to the Governor March 5th? or does the constitutional requirement that all bills be sent to the Chief Executive confer upon the Governor, by necessary implication, the right to evidence such receipt in a reasonable manner?

If the answer is that there is the implied power, then we must determine whether an official receipt (given the legislative agent who delivered the bill, and by such person filed with the Clerk of the House) was an appropriate acknowledgment, reaching the dignity of a record which may, in the absence of ambiguity, be received in evidence because it is a part of the record pertaining to the bill.

We think the receipt was such a document and that the rule barring extrinsic evidence to impeach legislative records was not transgressed when Circuit Court accepted it as an essential part of the chain of events.

It could not have been the intention of those who framed the Constitution, or the interpretation placed upon it when adopted, that records made by one branch of the government should have greater weight in determining a fact than recorded acts of the designated head of another department; hence, where there is equality of dignity, as here, the presumption of verity attaching to the Governor's course in vetoing the bill must sustain the proposition that he did not receive it within five days before legislative adjournment.

Finally, it is argued that because the General Assembly was not, in the first instance, concerned with adoption of Initiated Act No. 3 of Independence County, a bill by the legislature attempting to repeal it was not the kind of a measure required by the Constitution to be presented to the Governor. Amendment No. 7 might have been written in such manner as to supersede the existing mandate in that regard, but it was not.

Affirmed.