MARY COLLINS, a lunatic, by James H. Love,
her next friend,

*v.*

ROBERT O. BABBITT, administrator of Martin Collins,
deceased, and MARY BOLGER.

[Decided June 22d, 1904.   Filed December 23d, 1904.]

1. The statute of limitations does not apply as between husband and wife.

2. Where a wife lets her husband have money to continue as a deposit to aid him in carrying on his business, and with profits therefrom he buys valuable real estate, and has it conveyed to them as tenants by the entirety, with the right of survivorship, she should not, on his death, be allowed interest on the deposit prior to his death.

3. Where the husband received the rent of property owned by him and his wife as tenants by the entirety, declaring that when they amounted to $5,000 he would have it applied on the mortgage on the property, she, surviving him, is entitled to have the amount so accumulated applied as she shall direct.

4. Where the husband receives the rents of property owned by him and his wife as tenants by the entirety, and holds the money for the declared purpose of applying it, when it amounts to $5,000, on the mortgage on the property, she is not entitled to interest thereon from his estate on his death.

---

On final hearing on bill, answers and proofs.

The suit was originally commenced by a bill by Robert Davis, as assignee of Mary Collins, against Robert O. Babbitt, as administrator of Martin Collins, deceased, and Mary Bolger, to which separate answers were filed, and the cause brought to

issue and hearing on the 4th day of February, 1903. In the meantime, it came to the knowledge of the court in the course of the trial of the cause of Collins against Toppin, and was an admitted fact herein, that the assignee, Davis, held the title derived under the assignment wholly in trust for Mrs. Collins. Whereupon, by consent of all the parties, the bill was amended by substituting as complainant Mary Collins, by her next friend, James H. Love, and the hearing proceeded and the testimony was taken.

*Mr. Thomas F. Noonan,* for the complainant.

*Mr. David W. McCrea* and *Mr. Robert Lawrence,* for the administrator.

*Mr. Leon Abbett,* for the defendant Mary Bolger.

PITNEY, V. C.

This is a suit by a wife against the administrator of her husband. The object of the suit is to recover (1) moneys which, it is alleged, were loaned by the complainant to her husband in his lifetime; and (2) to recover in the first place certain moneys received by the husband in his lifetime for rents of certain real estate of which he and the complainant, his wife, were joint owners; and (3) for moneys received by the defendant administrator for rents of the same premises which accrued in the lifetime of the deceased but were collected by his administrator after his death; and (4) for rents which accrued after the death of the husband and also collected by the administrator.

There is a claim for a peculiar equity with regard to rents collected by the husband, which will be noticed further on.

Separate answers were filed by the administrator and by the defendant Mary Bolger, who is made a party defendant because she is the sister and the sole next of kin by blood of the complainant and as such entitled to a share of his net personalty.

One defence set up is that the administrator obtained from the orphans court the usual series of rules to bar creditors; and that the complainant filed her sworn claim against the estate in due time; that the administrator served the usual notice upon her; that a portion of the same was contested; and that she must bring her suit within three months, and that this suit was not brought within that time.

The notice to bring suit was dated on the 25th of July, 1901. The precise time when it was served, I think, does not appear by the proof, but the complainant produces a stipulation, signed by the solicitor of the administrator and by the solicitor of Mrs. Bolger, which states that the notice was served on the 2d of August, 1901, and that the time for the commencement of the suit might be extended to the 22d of November, 1901. The original bill was filed November 2d, 1901. An amended bill was filed on the 16th of January, 1902, which, by the written consent of the several solicitors of the defendants, was to stand in the place of the original bill.

I am unable to perceive under this state of facts how the plea of the bar of the decree of the orphans court can apply.

Besides, it abundantly appeared in the course of the production of the evidence in the case of *Collins* v. *Toppin,* *65 N. J. Eq. (20 Dick.) 439,* which was heard and submitted before the hearing in the present case, but decided afterward, that the complainant was during the latter part of the month of August and the whole of the months of September and October, 1901, and from then to date, so far mentally diseased as to be incapable of attending to her business. No proof of this was made in this cause; but, as I recollect it, it was assumed by counsel on all sides to be within the knowledge of the court, and if necessary for the purposes of this case I would open the proofs for the purpose of permitting it to be formally proven herein.

Moreover, there has been no settlement of the accounts of the administrator. The bar of the statute is not set up by the administrator but by the next of kin, and the suit is substantially against the next of kin, and even if the bar were effectual in favor of the administrator, it is by no means certain

(although I wish at this moment to express no definite opinion on the subject) that it could under the circumstances be availed of by the next of kin. I am therefore of the opinion that this defence fails.

The question, however, whether it does not apply to a certain portion of the complainant's claim for money lent, hereafter to be mentioned, still remains.

It is well settled (*Wood* v. *Chelwood, 44 N. J. Eq. (17 Stew.)* 64) that this claim could not be enforced by a suit at law. It is based upon a contract, express or implied, between husband and wife and must be brought in equity. Hence the filing of the bill is the commencement of a suit within the equity of the statute and is sufficient.

One part of the whole claim, as I have said, consists of money loaned by the wife to the husband. The facts are these:

It appears that on the 17th of April, 1888, complainant drew from an account which she had in the Provident Institution for Savings of Jersey City the sum of $1,000; and that on the 18th of April, 1888, she drew from an account which she had in the Emigrant Industrial Savings Bank, $1,100; and it appears that on the 20th of April, 1888, the defendant deposited to his account in the First National Bank of Jersey City the sum of $5,000 in currency, and the argument therefrom is that the wife loaned to the husband at that time $2,100, and that is the basis of that part of the claim for money loaned originally presented to the administrator and stated in this wise: "April 17, 1888, $1,000 loaned and advanced to Martin Collins by Mary Collins, his widow; April 18, 1888, $1,100 loaned and advanced—total $2,100." These drafts and the deposit of moneys are the only evidence, except admissions made by the deceased husband, offered in support of that claim. Whether any entries thereof were made in the books of account of Martin Collins, who was engaged in business in Jersey City, does not appear, for all his books of account prior to about 1893 were accidentally burned at that time.

At the hearing the complainant was permitted to amend her claim by adding thereto $1,000 for money loaned and advanced

by her to her husband in or about the year 1892, and in support of that she relies upon an entry, or series of entries, in the books of account of Martin Collins to her credit of $1,000, moneys loaned at that time, and that entry was carried forward from year to year in his books of account by his directions down to the time of his death, October 11th, 1900.

The excuse given by counsel for not putting that $1,000 in the original claim was that the wife was unaware of its entry in the books. The sworn claim to the administrator was made by the wife on the 29th of April, 1901, and it is a fair matter of argument that if, as claimed at the hearing, her husband owed her $3,000 instead of $2,000, as claimed by her, she ought to have known it and so instructed her counsel. I think the excuse made by counsel for this omission is wholly insufficient. It satisfactorily appeared that one, if not the main, object of the assignment to Mr. Davis was to enable the present complainant to be a witness in the suit to be brought by him, and in that case her evidence could as well include the $1,000 loaned in 1892 as the $2,100 loaned in 1888.

But here again the state of her mind comes in. It was known to the court that she had previous to that time been on two separate occasions incarcerated as a lunatic in the Morris Plains hospital; and that she was released therefrom against the protest of the physicians as fit to be at large on the 27th of January, 1901, just three months previous to. the time of her making her sworn claim; and that the assignment to Mr. Davis was dated a day or two after her release. And if it was not understood by the counsel for Mrs. Bolger that these facts were in the mind of the court at the hearing of this cause, I should feel disposed to open the proofs to enable the complainant by her next friend to prove them as an explanation of the failure to include the whole claim now made in the written claim made on the 29th of April, 1901.

Reliance for proof of the whole of this claim for money loaned is had upon several admissions made by Martin Collins in the early part of the year 1900 to his wife and others that he owed her $3,000. The proofs of these admissions, though some-

what suspicious under the circumstances, are so clear and abundant that I do not see my way to refuse them probative force, and I must accept as a proven fact in the case that he did admit on two or three occasions in 1900 to his wife and to another person in her absence that he owed her $3,000, and it is fairly to be inferred from the language used that it was for money lent.  And one witness swears that he specified the origin of the debt as $2,100 borrowed when he commenced business, in 1888, and $1,000 when he was in financial distress, in 1892, or thereabouts.  A payment of $100 on account of the indebtedness on or about February 13th, 1901, is relied upon to take the case out of the operation of the statute of limitations.  Proof of this payment is given by a female friend of the husband and wife, Miss Lottie Toppin, a sister of the defendant in *Collins* v. *Toppin* and a witness in that suit.

Her testimony satisfies me that the deceased did, on the occasion testified about, hand to his wife the sum of $100, but it fails to satisfy me that it was made on account of any indebtedness from the husband to the wife.  The proper inference, as I think, to be drawn from the evidence of this witness is that it was handed to his wife by her husband precisely as any husband would hand money to his wife for her use as spending money. But one witness, perhaps two, do swear that subsequently the deceased admitted that he had owed his wife $3,100, and that he had recently paid her $100 on account thereof, and I am unable to say that I do not believe the truthfulness and accuracy of these witnesses, although, as before remarked, the evidence is given under very suspicious circumstances, especially in view of the fact that the original claim, made up on the 30th of April, shortly after these admissions were made, was confined to the claim for the money advanced in the year 1888.

I come, then, to this conclusion upon the facts, viz., that the complainant did loan or hand to her husband the sum of $2,100 on the 17th and 18th of April, 1888; that she did loan to him the further sum of $1,000 in the year 1892, and that he admitted in the early part of the year 1900, on two or three occasions, that he owed his wife the sum of $3,000, and to one

person he admitted that that indebtedness was founded on the items just stated.

I find, as a further fact, that he did hand to his wife, on or about the 12th or 13th of February, 1901, the sum of $100, but that the proof does not show that at the time it was treated by either party as a payment on account of an existing indebtedness, but that he subsequently admitted in connection with an admission that he had owed his wife $3,100 that he had paid her $100 on account thereof. The proof, then, is an admission of an indebtedness *in præsenti,* based on money loaned and advanced more than six years previously and an admission of a payment made on account thereof within one year, and the question is whether the claim is barred by the statute of limitations, and, if so, whether an exception exists as to the $1,000 loaned in 1892, which was carried forward from year to year on the books of the deceased to the credit of his wife.

The case has been in substance twice argued. At the first argument counsel for complainant put his case upon the vitalizing effect of the payment of $100, above mentioned.

I examined this question carefully and came to the conclusion that as the proofs showed satisfactorily that such payment was not in fact a payment on account of an indebtedness, the subsequent admissions of the deceased that it was so paid was not sufficient to avoid the effect of the statute of limitations.

On a reargument counsel for complainant put his case upon the ground (1) that the suit being in effect by wife against husband was of necessity brought in equity; (2) that the statute of limitations did not by its terms apply to a suit in equity; (3) that it was to be applied here by analogy, and in such a manner as to advance and work equity; (4) that the transaction, in point of fact or in substance, was a mere deposit by the wife with the husband of moneys to enable him to start and prosper in his business, and was not by either party expected to be withdrawn suddenly, and hence that no action would lie for it until after a positive demand made and a reasonable time afforded for payment; and (5) that the considerations of the relations existing between husband and wife had led to the

judicial conclusion that the statute of limitations did not operate as between husband and wife, and he pointed to authorities on that subject which I must consider as binding on me. They are *Gray* v. *Gray's Administrator, 39 N. J. Eq. (12 Stew.) 512*, in the court of errors and appeals; *Yeoman* v. *Yeoman's Administrator, 40 N. J. Eq. (13 Stew.) 495; Rusling* v. *Rusling's Executors, 42 N. J. Eq. (15 Stew.) 594*, and *Alpaugh* v. *Wilson, 52 N. J. Eq. (7 Dick.) 424.*

In the last case the subject is discussed and decided by Vice-Chancellor Bird, relying on the cases I have just cited, and his decree was affirmed by the court of errors and appeals, *52 N. J. Eq. (7 Dick.) 589*, for the reasons given by him in the court below.

The action there was based upon a promissory note and the element of a deposit in the nature of a trust was lacking.

That decision binds me, and I must, therefore, find that the complainant's claim must be allowed to the extent of $3,100.

The next question presented is the claim for interest for all the intervening years upon the two sums, viz., $2,100 from 1888 and $1,000 from 1892.

I think that the complainant's contention that the transaction amounted to a *quasi* deposit, which was to continue in order to aid the husband in carrying on his business, is entirely in consonance with the circumstances of the case.

Other circumstances are, first, that there were no offspring of the marriage; and second, that some time before he died the husband procured the conveyance of valuable real property to himself and wife as tenants by the entirety with the usual right of survivorship. The cost of that property was paid out of the earnings of the business of the husband, which was maintained in part by the money of the wife. The wife was cognizant of the situation and acquiesced in it. Besides, she was all the while maintained in decidedly comfortable, if not luxurious, style by her husband.

There is nothing in the evidence or circumstances upon which it may be determined whether any interest, as such, was ever paid on this indebtedness. The witnesses, who testify to the

husband's admissions, do say that he expressed a willingness that his wife should have interest on this large sum. But it is significant that in the carrying forward from year to year of the credit on his books of account of $1,000 no mention is made of interest, and the admission just referred to was made at a time when his wife had been recently, if she was not then, suffering under mental disorder, and manifestly it was his desire to soothe her excitement and produce as much calmness of mind as possible. Taking all these considerations together, I do not think that justice and equity require that interest should be allowed upon this claim up to the time of the husband's death. I think that justice will be done by decreeing that she should have such interest from the time of his death.

The next question arises out of the joint ownership of the husband and wife of certain real estate in Jersey City, which real estate, at her husband's death, was subject to a heavy mortgage and occupied by tenants paying rent to an agent in charge.

The husband received these rents and kept a separate account of them under the head of "Rent Account." He credited "rent" with all receipts for rent and charged it with the expenses, viz., the interest on the mortgage, taxes, insurance, water rates, and with any serious repairs. It appears that he ordered his bookkeeper to charge small repairs to his own account. At the time of his death there was a balance of $3,814.08 standing to that account.

There was also a small amount of rent, which accrued before his death, not received by him in his lifetime; and there was interest in arrear and unpaid on the encumbrance.

As I interpret the evidence of the agent, there was an item of $2.60 of rent which had accrued before October 1st, and rents amounting to $171.92, which accrued between October 1st and decedent's death on October 11th, in all $174.52, less five per centum commissions, amounting to $8.72, leaving $165.80 net rents accruing in the husband's lifetime which were collected by the agent in charge of the property and paid over to the administrator, and with that accruing and collected after his death amounting to $1,483.

The claim of the wife is, first, as to $3,814.08, that there was an understanding between her and her husband that the net receipts for rents over and above the outgo for interest, taxes, &c., should be applied to the reduction of the principal of the mortgage, and her right to enforce that arises out of the fact that at her husband's death she became seized of the whole title and will be benefited by such application.

It is true that shortly after she made her claim to the administrator she made a conveyance of the premises to a Miss Toppin, who is the defendant in the suit of *Collins* v. *Toppin,* above referred to, and that conveyance was set up in the answer of Mrs. Bolger, and the question seemed to arise at the hearing as to what effect that conveyance had upon the equity set up by the complainant.

It was understood at the hearing of this cause that the suit above named was pending and under consideration by the court. Since that time a decree has been made therein in favor of the complainant and setting aside the conveyance. That decree has been affirmed by the court of errors and appeals.

An attempt was made by the complainant to prove an express agreement or contract between her and her husband that the net rents, as they accrued, should be applied to the reduction of the principal of the mortgage.

In support of this contention the directions of Mr. Collins to his bookkeeper to keep the rent account separate were relied upon, and also his declarations from time to time that he intended, as soon as the net amount reached the sum of $5,000, to make a payment thereout upon the mortgage, and the expression "agreement" was used in connection with the relation between husband and wife in that matter. But, upon a careful review of the evidence, I am not satisfied that any such agreement in the strict sense of the word ever did exist. No doubt the husband did intend, and so stated to his wife, that he would reduce the mortgage by the accumulation of the income, but it never rose to the dignity of a contract. At the same time the evidence on that subject is of value in connection with the legal relations between the parties.

It seems to be well settled that the effect, and only effect, of the Married Women's act of 1852 upon the peculiar estate in land held by a man and his wife under a conveyance to them jointly is to entitle the wife to an equal right with the husband to the usufruct of the land so held during their joint lives. At the common law the husband had the right, during his lifetime, to the exclusive usufruct of the lands held by him and his wife jointly as well as of the lands held solely by the wife, but that right was taken away by the statute. The subject was considered by the court of appeals in the case of *Buttlar* v. *Rosenblath, 42 N. J. Eq. (15 Stew.) 651.* At *p. 656,* Judge Van Syckel, speaking for that court, said: "In virtue of the married relation the husband took possession and deprived the wife of the enjoyment of her estate or interest in the lands during their joint lives. In my opinion the object and effect of the Married Women's act is to extinguish this right." And, at *p. 657,* he says: "I think, therefore, that the just construction of this legislation and the one in harmony with its spirit and general purpose is that the wife is endowed with the capacity, during their joint lives, to hold in her possession as a single female one-half of the estate in common with her husband, and that the right of survivorship still exists as at the common law."

The supreme court, speaking by the late Mr. Justice Depue, in *Vunk* v. *Raritan River Railroad Co., 56 N. J. Law (27 Vr.) 395* (at *p. 398*), says:

"The effect of the act of 1852 upon estates conveyed to husband and wife after that act went into operation was to endow the wife with the capacity during the joint lives to hold in her possession, as a single female, one-half the estate in common with her husband and the right of survivorship subsisting as at common law."

The complainant, then, was entitled to the equal undivided one-half of the net proceeds of the property in question, and the language and conduct of the husband with regard to the rents, as detailed in the evidence, must be construed accordingly. As I have said, she had the right actually to receive and to devote

to her own purposes one-half of the rents, or she could permit her husband to retain them upon such terms as she chose. Now, it appears clearly that her husband did retain them, but he kept an account of their net accretion, and he declared that the object of that was to make a payment on the mortgage, and I think the evidence proves that such intention was known by the wife. Now, the application of the rents to the reduction of the mortgage was a proper and equitable disposition of them and just to both parties, and upon the whole case I am led to the conclusion that the wife had a right, under the circumstances, to conclude that her husband would so apply them, and that she permitted them to be retained by him for that purpose. She therefore had the right in his lifetime to have those moneys so applied.

It follows that when she survived him and the whole estate became vested in her she had the right to have the amount so accumulated in his hands applied by his personal representative as she should direct.

Primarily the right was to have it applied to the reduction of the mortgage, but at his death that right became a personal one with her to apply it or not to the reduction of the mortgage, as she chose.

This view simplifies some of the questions which would otherwise arise out of the receipt and disbursements of rents collected by the administrator.

There was a considerable arrear of interest due on the mortgage at the death of the husband, October 11th, 1900. These arrears were paid by the administrator, or the agent who collected the rents by the request of the administrator, out of the rents collected by the agent, as well as those that accrued between the 1st and 11th of October, as those which accrued afterward.

I should have said that all the rents, except $2.60, which accrued up to and including the 1st of October, had, as I understood the evidence, been turned over to the deceased in his lifetime and are included in the $3,814.08. The balance of the

rents which were received by the administrator, after paying the interest, &c., is small, and amounts, as I recollect, to between $100 and $200. The exact amount is not in dispute and can be settled between counsel.

If I am wrong in holding that the complainant is entitled to the whole of the rent fund ($3,814.08), then she is entitled, of course, to one-half, and a serious question arises as to whether the administrator can be credited, as between him and the complainant, with the whole amount of the interest paid by him. In such case it seems to me that so much of the interest as accrued before the death of the husband should be paid out of his estate at large, and not out of any rents which accrued after the death of the husband. Those rents belong wholly, of course, to the wife, and she was not bound to pay more than one-half of the interest which accrued before his death.

The remaining question in this cause is as to interest.

With regard to the sum of $3,814.08, it appears that the husband held that money for a particular purpose, viz., to allow it to accumulate until there was enough to make a solid payment of $5,000 on the principal of the mortgage. There is no proof to show what benefit he derived from it. He did mingle it with his own funds, but upon the whole case, and considering that they were living together as husband and wife, and the husband was supporting his wife, I do not think it could have been contemplated between them that the husband should pay interest on that sum.

I will advise a decree according to these views.