ROSEMARIE KOPLIK, PLAINTIFF-RESPONDENT, v. C. P. TRUCKING CORPORATION, *ETC.*, *ET ANO.*, DEFEND-ANTS, AND FREDERICK PATRIZIO, DEFENDANT-AP-PELLANT.

Argued March 4, 1958—Decided May 5, 1958.

2

*Mr. Jesse Moskowitz* argued the cause for the plaintiff-respondent.

*Mr. Emil W. A. Schumann* argued the cause for the defendant-petitioner Frederick Patrizio.

The opinion of the court was delivered by

FRANCIS, J.   Plaintiff Rosemarie Koplik was injured in a motor vehicle collision on June 17, 1955, in the State of New York.   The defendant Frederick Patrizio was the driver of one of the vehicles involved and plaintiff was riding in it as an invited passenger.   At that time both parties resided in New Jersey and they have continued to do so.   On January 11, 1956, Miss Koplik instituted this action against Patrizio to recover damages on account of her injuries. Thereafter, on June 2, 1956, she married him.   On motion predicated upon the ground that the marriage removed her right to prosecute the suit, the trial court entered summary judgment for the defendant.   The Appellate Division reversed, holding that the Married Persons Act, *N. J. S. A.* 37:2–1 *et seq.,* does not stand in the way of prosecution of a cause of action by a wife against her husband for an antenuptial tort.   *Koplik v. C. P. Trucking Corp.,* 47 *N. J. Super.* 196 (*App. Div.* 1957).   We granted certification to review the matter.

Since the parties were not husband and wife when the mishap occurred, manifestly the female plaintiff acquired a cause of action against Patrizio at that time.   No conflict of laws problem is presented with respect to it, for both New York and New Jersey recognize her right to sue in such a situation.   The issue here is simply whether the subsequent marriage before judgment extinguishes the right to prosecute the action.

It is universally acknowledged that at common law a tort such as this one could not be redressed between wife and husband by action at law or in equity.   *Kennedy v. Camp,* 14 *N. J.* 390 (1954).   This immunity has been diluted in the various states and in England by "married

persons" statutes. The extent of the refinement brought about by these acts has been the source of much conflict among the courts throughout the country. But, as is recognized in the Appellate Division opinion, the majority have decided that such legislation does not sanction suits between spouses for personal torts. 47 *N. J. Super.*, at *page* 200; *Annotation* 43 *A. L. R. 2d* 632, 636 (1955). One conclusion is inescapable from a review of the divergent viewpoints. The particular statute is controlling and the immunity persists except as the language employed by the Legislature appears to direct its modification or relaxation. 43 *A. L. R. 2d,* at *page* 651; *McCurdy, "Torts Between Persons in Domestic Relation,"* 43 *Harv. L. Rev.* 1030, 1081 (1930). If the enactment expressly or by clear implication preserves the interspousal exemption and the ancient barrier against actions between husband and wife for injuries negligently inflicted by one on the other, whatever may be the personal predilections of the particular court in such matters, they must give way to the legislative will. Thus, we are brought to an examination of the Married Persons Act of this State.

Over a period of more than 100 years, a succession of New Jersey Legislatures have narrowed the scope of the disability of the husband and wife in their jural relations with each other and with third persons. Out of the numerous enactments has evolved the body of law appearing in *N. J. S. A.* 37:2–1 *et seq.* The specific respects in which the immunities and disabilities have been removed appear in Justice Ackerson's dissent in *Bendler v. Bendler,* 3 *N. J.* 161, 174–175 (1949), and need not be repeated here. The important factor to be noted is that despite the changes thus made in the common law, and the decisions construing the statutory language by which they were accomplished, *N. J. S. A.* 37:2–5 still contains the following wordage which is comparatively more pervasive than that of the original enactment in the *Revision of* 1877, *p.* 639, § 14:

"Nothing in this chapter contained shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter."

It is not suggested that personal injury tort actions between husband and wife based upon negligence were maintainable prior to 1877, or that this enactment authorized them.

As far back as 1880, the clarity of that language was the subject of judicial comment. In *Woodruff v. Clark & Apgar*, 42 *N. J. L.* 198 (*Sup. Ct.* 1880), Chief Justice Beasley, speaking of the disability to contract, said:

> "This language is not uncertain, and the provision is perspicuous with respect to its policy. The object was to leave the husband and wife, touching their capacity to bargain together, on the ancient footing of the common law. The clause is virtually a legislative declaration that, as heretofore, they may enter, *inter sese*, into equitable agreements, but not into legal agreements. ·
>
> \*        \*        \*        \*        \*        \*        \*        \*
>
> At all events, the will of the legislature is expressed in an unequivocal manner, to leave unaltered the *status* of married persons in relation to this subject, and the consequence is the contract in question cannot be carried into effect in a court of law."

And as late as 1949, this court adopted Chief Justice Beasley's view of the unambiguous character of the provision and applied it with unabated vigor as a bar to enforcement of alleged workmen's compensation rights arising out of interspousal employment contracts. *Bendler v. Bendler, supra.* Continuance of the "disablement of husband and wife \* \* \* to sue each other \* \* \* 'except as heretofore, and except as authorized'" by the Legislature, was recognized and the acceptance of the rule was accompanied by the statement:

> "\* \* \* The integrity of the marriage relation is of primary concern to society. That is the principle of the statutory provision that continues the common-law mutual disability of a husband and wife to contract *inter se* and to sue each other. \* \* \*"

An effort was made in 1926 to establish that a cause of action for personal injuries suffered by a wife through the negligence of her husband could be prosecuted in equity. But on motion the complaint was stricken. *Von Laszewski v. Von Laszewski*, 99 *N. J. Eq.* 25 (*Ch.* 1926). Vice-Chancellor Leaming said:

"Neither at law nor in equity can an action be maintained by a wife against her husband for personal injuries.

\* \* \* \* \* \* \* \*

As to our Married Woman's Act \* \* \*, it is sufficient to say that, in the absence of a clear manifestation of legislative intent to effect so radical a change in our long-established rules in this respect, legislative purpose should not be declared by implication."

The rule was reiterated in 1939 in *Hudson v. Gas Consumers' Association*, 123 *N. J. L.* 252 (*E. & A.* 1939), where the court declared:

"It is of course a settled matter that a wife may not have a suit for damages against her husband for his tort. This is the common law rule and no statute has been enacted in this state that disturbs it."

It was recognized again by this court in *Clement v. Atlantic Casualty Ins. Co.*, 13 *N. J.* 439, 445 (1953), and repeated as a settled doctrine in *Kennedy v. Camp, supra,* 14 *N. J.* at *page* 397. And see also *Drum v. Drum,* 69 *N. J. L.* 557 (*Sup. Ct.* 1903); *Metzler v. Metzler,* 8 *N. J. Misc.* 821 (*Cir. Ct* 1930); *Lang v. Lang,* 24 *N. J. Misc.* 26 (*Cir. Ct.* 1946). In spite of the many years that have gone by since the proscription against such interspousal suits was first enacted, during which the courts have been applying it in the situations described, it has never been changed. On the contrary it was included in the *General Statutes* of 1895, *p.* 2015, § 14, and in the *Compiled Statutes* of 1910, *p.* 3237, § 14. And in the *Revised Statutes of* 1937 the language was made more comprehensive and more emphasis was given to it by specifically relating it to the various legislative enactments which were then gathered into *chapter* 2 of *Title* 37. At that time, as has been indicated, the prohibition took on its present form: "Nothing in this chapter contained shall enable a husband or wife \* \* \* to sue each other \* \* \*." *N. J. S. A.* 37:2–5. Thus it may be said fairly that in this State the common law interspousal negligence tort immunity has been perpetuated, and that it has been made a part of our statutory law as well. After

the repeated constructions and applications of the act by the courts, its re-enactment in the *Revision* must be regarded as a gesture of legislative approval of such judicial interpretation. *Sacknoff v. Sacknoff*, 131 *Me.* 280, 161 *A.* 669 (1932); *cf. State v. Federanko, 26 N. J.* 119 (1958).

The history of the litigation before us, as it has been outlined, shows that the accident happened and that the suit was brought prior to the marriage. The specific question posed, therefore, is whether such circumstances render the interspousal disability any the less operative. There is no doubt that the parties are now husband and wife. The statute establishes no qualifications on the general prohibition against a suit between them. It is of no material consequence whether the action was instituted before or after the marriage. The word "sue" in its ordinary connotation, and patently in the sense used by the Legislature, means to commence or to continue legal proceedings to their proper and usual termination. *Hindman v. Holmes, 4 Ill. App. 2d 279, 124 N. E. 2d 344 (App. Ct.* 1955); *Sigona v. Slusser, 124 F. Supp.* 327, 329 *(D. C. Conn.* 1954); *Lervold v. Republic Mut. Fire Ins. Co.,* 142 *Kan.* 43, 45 *P.* 2d 839 (1935); *Black's Law Dictionary (4th ed.* 1951), *p.* 1600; *Webster's New International Dictionary (2d ed. unabridged,* 1949) *p.* 2519. So the crucial criterion is simply whether the litigants are husband and wife. If so, the public policy of the State, as reflected in the statute, bans the action. *Cf. Clement v. Atlantic Casualty Ins. Co., supra,* 13 *N. J.* at *page* 445. And the right to sue, that is, to prosecute the cause of action, must be considered as having been extirpated by the voluntary assumption of the marital status. For manifestly our statute simply disables or incapacitates the spouse possessing the cause of action from suing the tortfeasor mate. *Bendler v. Bendler, supra, 3 N. J.* at *page* 168; *Clement v. Atlantic Casualty Ins. Co., supra.* We pass no judgment as to whether the claim may be vindicated by action in New York. The principle with which we are concerned does not look to the relation of the parties when the cause of action accrued or when the case was commenced but to

their status at the time when their rights are judicially determined.   *Spector v. Weisman,* 59 *App. D. C.* 280, 40 *F. 2d* 792 (*Ct. App. D. C.* 1930).

The reports contain but one case in New Jersey where the precise question was raised   In *Wolfer v. Oehlers,* 8 *N. J. Super.* 434 (*Law Div.* 1950), it was held that the reciprocal spousal disability prevented continuance of a suit for an antenuptial tort stemming from an automobile accident.   Of course, the ruling is not binding on this court, but it is not without persuasive influence, particularly since it was cited with apparent approval—at least without critical comment—in *Clement v. Atlantic Casualty Ins. Co., supra,* 13 *N. J.* at *page* 445.   Furthermore, this Court by way of express statement, albeit *dictum,* in *Kennedy v. Camp, supra,* 14 *N. J.* at *page* 397, said:

"And, for the same basic reason, liability for ante-nuptial torts is extinguished by marriage."

Two cases were cited in support of that view, *Henneger v. Lomas,* 145 *Ind.* 287, 44 *N. E.* 462, 32 *L. R. A.* 848 (*Sup. Ct.* 1896), and *Gottliffe v. Edelston,* 2 *K. B.* 378 (1930).   The *Henneger* case, which asserted the principle, is still the law of Indiana, although it was criticized later by an intermediate appellate court in *Hunter v. Livingston,* 125 *Ind. App.* 422, 123 *N. E. 2d* 912 (*App. Ct.* 1955). *Gottliffe v. Edelston* has since been overruled expressly by *Curlis v. Wilcox,* 2 *K. B.* 474, 2 *All. Eng.* 573 (1948), as to instances where suit is brought on such a tort prior to the marriage.   But additional precedents are readily available.   *Baker v. Gaffney,* 141 *F. Supp.* 602 (*D. C.* 1956); *Morgan v. Leuck,* 137 *W. Va.* 546, 72 *S. E. 2d* 825 (*Sup. Ct.* 1952); *Furey v. Furey,* 193 *Va.* 727, 71 *S. E. 2d* 191 (*Sup. Ct.* 1952); *Staats v. Co-Operative Transit Co.,* 125 *W. Va.* 473, 24 *S. E. 2d* 916 (*Sup. Ct.* 1943); *Carmichael v. Carmichael,* 53 *Ga. App.* 663, 187 *S. E.* 116 (1936); *Kyle v. Kyle,* 210 *Minn.* 204, 297 *N. W.* 744 (1941); *Patenaude v. Patenaude,* 195 *Minn.* 523, 263 *N. W.* 546

(*Sup. Ct.* 1935); *Lubowitz v. Taines,* 293 *Mass.* 39, 198 *N. E.* 320 (*Sup. Jud. Ct.* 1936); *Palmer v. Edwards,* 155 *So.* 483 (*La. App.* 1934), rehearing denied 156 *So.* 781 (*La. App.* 1934); *Scales v. Scales,* 168 *Miss.* 439, 151 *So.* 551 (*Sup. Ct.* 1934); *Webster v. Snyder,* 103 *Fla.* 1131, 138 *So.* 755 (*Sup. Ct.* 1932); *Raines v. Mercer,* 165 *Tenn.* 415, 55 *S. W. 2d* 263 (*Sup. Ct.* 1932).

The Massachusetts statute, referred to in *Lubowitz v. Taines, supra* [293 *Mass.* 39, 198 *N. E.* 321], is quite like ours. It says, *inter alia,*

"A married woman may sue and be sued in the same manner as if she were sole; but this section shall not authorize suits between husband and wife." *G. L.* (*Ter. Ed.*) *c.* 209, § 6.

Such language provided the requirement for dismissal after marriage of a suit predicated upon a pre-marriage automobile accident. The ground assigned was that the statute extinguished the right to sue when the change of status took place.

Regardless of the views expressed in other jurisdictions, we must come back to our own statute for the ultimate decision. The language clearly maintains the interspousal disability. Under the interdiction a wife cannot sue her husband in this sort of case. And it would be an illogical interpretation to declare that a wife is not a wife, or suing as a wife, within its meaning, because her action is predicated upon an antenuptial tort. Moreover, it cannot escape attention that in the eight years since the *Wolfer* case was decided, the Legislature has made no move to alter the doctrine, although in 1953 an amendment was made to *N. J. S. A.* 37:2–9, which deals with the procedural right of a wife to sue for torts committed against her without joining her husband in the action. *L.* 1953, *c.* 34.

It is of no consequence that the automobile accident took place in New York, where by statute a wife can sue a husband. 14 *McKinney's Consolidated Laws of New York, Annotated, Domestic Relations Law, Consol. Laws, c.* 14, §️ 57. Plaintiff and defendant, who were and are residents of this

state, were not married at the time. Upon assumption of the marriage relationship subsequent to the origin of this ordinary tort cause of action between them as individuals, by force of our statute and the public policy represented thereby, there no longer existed any tribunal here in which the wife's claim could be prosecuted. But assuming that some form of conflict of laws problem can be considered as arising from the fact that had the parties been residents of New York, their marriage would not have prevented the prosecution of suit in that state, plaintiff's position is not improved. The situation would be somewhat similar, although of much weaker significance as a conflict of laws problem, to that appearing in *Mertz v. Mertz*, 271 *N. Y.* 466, 3 *N. E. 2d* 597, 598, 108 *A. L. R.* 1120 (*Ct. App.* 1936), which was decided while the interspousal disability was still in force in New York. (The amendment referred to was adopted shortly after the case was decided. *L.* 1937, *c.* 669.) There, it appeared that a wife was injured in an accident while a passenger in a car driven by her husband. They were residents of New York but the accident occurred in Connecticut where the legislature had chosen to eliminate the common law disability of spouses to sue each other. The wife brought suit in New York. The action was dismissed, the Court of Appeals holding that the law of the place where the suit is brought is determinative of the issue of whether a wife may sue her husband for personal injuries. Speaking for the court, Judge Lehman said:

"The law of one state has in other jurisdictions such force only as is lent to it by the law of such jurisdiction. A cause of action for personal injuries is transitory. Liability follows the person and may be enforced wherever the person may be found. None the less, a cause of action arising in one state may be enforced in another state only by the use of remedies afforded by the law of the forum where enforcement is sought. The courts of the state of New York are not concerned with the wisdom of the law of Connecticut or of the internal policy back of that law. They must enforce a transitory cause of action arising elsewhere, unless enforcement is contrary to the law of this state. So we have said, 'The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual [n]otion of expediency

or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.'

    \*       \*       \*       \*       \*       \*       \*       \*

The law of the forum determines the jurisdiction of the courts, the capacity of the parties to sue or to be sued, the remedies which are available to suitors and the procedure of the courts. Where a party seeks in this state enforcement of a cause of action created by foreign law, he can avail himself only of the remedies provided by our law, and is subject to the general limitations which are part of our law. \* \* \* 'If no form of action is provided by the law of a State for the enforcement of a particular foreign right, no action to enforce that right can be maintained in the State.' *Restatement of Law of Conflict of Laws*, § 609. Our courts are not concerned with the internal policy of the state which created the cause of action. They are concerned solely with the law of this state which determines the jurisdiction of its courts and the remedies that may be accorded here. The law of this state attaches to the marriage status a reciprocal disability which precludes a suit by one spouse against the other for personal injuries. It recognizes the wrong, but denies remedy for such wrong by attaching to the person of the spouse a disability to sue. No other state can, outside of its own territorial limits, remove that disability or provide by its law a remedy available in our courts which our law denies to other suitors. \* \* \* A disability to sue which arises solely from the marital status and which has no relation to a definition of wrong or the quality of an act from which liability would otherwise spring may perhaps be an anachronistic survival of a common-law rule. Even then the courts should not transform an anachrony into an anomaly, and a disability to sue attached by our law to the person of a wife becomes an anomaly if another state can confer upon a wife, even though residing here, capacity to sue in our courts upon a cause of action arising there."

See also *Kyle v. Kyle, supra; Kircher v. Kircher,* 288 *Mich.* 669, 286 *N. W.* 120 *(Sup. Ct.* 1939); *Poling v. Poling,* 116 *W. Va.* 187, 179 *S. E.* 604 *(Sup. Ct.* 1935). It may be noted also that after the amendment of the New York statute and although its own residents were involved, the courts of that state exhibited a sensitive regard for the policy of states where the right of action continued to be banned. *Coster v. Coster,* 289 *N. Y.* 438, 46 *N. E.* 2d 509, 146 *A. L. R.* 702 *(Ct. App.* 1943).

██ As a final word on the subject, we hold the view that even where an actual conflict of laws problem is directly presented, it is sensible and logical to have disabilities to

sue and immunities from suit arising from the family relationship determined by reference to the law of the state of the family domicile when the suit is brought in that state. Otherwise, the *lex loci* will be permitted to interfere seriously with a status and a policy which the state of residence is primarily interested in maintaining. *Emery v. Emery,* 45 *Cal. 2d* 421, 289 *P. 2d* 218 (*Sup. Ct.* 1955); *Ford, "Interspousal Liability for Automobile Accidents in the Conflict of Laws: Law and Reason Versus the Restatement,"* 15 *U. of Pitt. L. Rev.* 397, 409–415 (1954).

In the final analysis, solution of the problem of continued existence of the suit disability in a particular jurisdiction depends upon its statute. The policy issue is clear and if a legislature wishes to abrogate the immunity, it ought to say so clearly and unequivocally. Such was the view of the United States Supreme Court in *Thompson v. Thompson,* 218 *U. S.* 611, 31 *S. Ct.* 111, 112, 54 *L. Ed.* 1180 (1910), in passing upon the effect of the District of Columbia married persons act. The court said:

"It must be presumed that the legislators who enacted this statute were familiar with the long-established policy of the common law, and were not unmindful of the radical changes in the policy of centuries which such legislation as is here suggested would bring about. Conceding it to be within the power of the legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness."

All of these considerations lead to the conclusion that under our present statute, *N. J. S. A.* 37:2–5, the plaintiff wife cannot maintain the action against her defendant husband. There is no present need to dilate the arguments that have been advanced for and against the continued

existence of the interspousal immunity doctrine. They are set forth very well in the exhaustive opinion of the Oklahoma Supreme Court in *Courtney v. Courtney*, 184 *Okl.* 395, 87 *P. 2d* 660 (*Sup. Ct.* 1938), where, in the discussion of the views of the various states, it was pointed out that the New Jersey statute forbids such actions. A similarly elaborate essay appears in *McCurdy, supra*, 43 *Harv. L. Rev.* 1030 *et seq.*

If, as was said in discussing the problem of statutory construction involved in *Kennedy v. Camp, supra,* this construction "be considered narrow and its consequences socially undesirable * * * the remedy lies in the hands of the Legislature." At *page* 403 of 14 *N. J.*

The judgment of the Appellate Division is reversed and that of the trial court is reinstated.

JACOBS, J. (joined by WEINTRAUB, C. J. and WACHENFELD, J.) (dissenting). The common law viewed the legal existence of the wife during marriage as having been suspended or at least "incorporated or consolidated into that of the husband." 1 *Blackstone, Commentaries* 442. Under this medieval concept the wife was precluded from maintaining any action at law or equity against her husband for his wrongful conduct whether it was intentional or negligent, affected her person or property, or occurred before or during the marriage. See *Prosser, Torts* 670 (*2d ed.* 1955). The resulting injustices were patent and the disintegration of the concept (even apart from criminal and matrimonial proceedings) began centuries ago. By the 18th Century equity had developed its own doctrine of the married woman's separate estate under which it entertained various actions by wives against husbands, and in the 19th Century comprehensive legislation which was designed to advance the general emancipation of married women was enacted in England and throughout the United States. See *McCurdy, "Torts Between Persons in Domestic Relation,"* 43 *Harv. L. Rev.* 1030, 1035 (1930).

Despite the foregoing and 20th Century social changes many states, while permitting property and contract actions, still refuse to permit personal injury actions by a wife against her husband although an ever increasing minority views the husband's immunity from such actions as an historical survival which has no justifiable place in modern times. See *Annotation, "Right of one spouse to maintain action against other for personal injury,"* 43 *A. L. R.* 2d 632, 647 (1955). In the following cases the wife's personal injury action was sustained: *Taylor v. Patten,* 2 *Utah* 2d 404, 275 *P.* 2d 696 (1954); *Brown v. Gosser,* 262 *S. W.* 2d 480 *(Ky. Ct. App.* 1953); *Jernigan v. Jernigan,* 236 *N. C.* 430, 72 *S. E.* 2d 912 (1952); *Damm v. Elyria Lodge No. 465,* 158 *Ohio St.* 107, 107 *N. E.* 2d 337 (1952); *Lorang v. Hays,* 69 *Idaho* 440, 209 *P.* 2d 733 (1949); *Scotvold v. Scotvold,* 68 *S. D.* 53, 298 *N. W.* 266 (1941); *Courtney v. Courtney,* 184 *Okla.* 395, 87 *P.* 2d 660 (1938); *Rains v. Rains,* 97 *Colo.* 19, 46 *P.* 2d 740 (1935); *Fitzmaurice v. Fitzmaurice,* 62 *N. D.* 191, 242 *N. W.* 526 (1932); *Bennett v. Bennett,* 224 *Ala.* 335, 140 *So.* 378 (1932); *Katzenberg v. Katzenberg,* 183 *Ark.* 626, 37 *S. W.* 2d 696 (1931); *Wait v. Pierce,* 191 *Wis.* 202, 209 *N. W.* 475, 210 *N. W.* 822, 48 *A. L. R.* 276 (1926); *Bushnell v. Bushnell,* 103 *Conn.* 583, 131 *A.* 432, 44 *A. L. R.* 785 (1925); *Prosser v. Prosser,* 114 *S. C.* 45, 102 *S. W.* 787 (1920); *Gilman v. Gilman,* 78 *N. H.* 4, 95 *A.* 657, *L. R. A.* 1916B, 907 (1915). Compare *Brandt v. Keller,* 413 *Ill.* 503, 109 *N. E.* 2d 729 (1953), with *Hindman v. Holmes,* 4 *Ill. App.* 2d 279, 124 *N. E.* 2d 344 (1955).

In general those who favor the majority view no longer seek to support it on the fanciful common law notion that since the spouses are "one person, one cannot sue the other"; instead they now urge that the husband's immunity serves to preserve domestic tranquillity and tends to avoid fraudulent and collusive actions. In the rare instance where the wife will sue her husband despite his objection there is probably not much tranquillity to preserve and in other

instances (as here) the husband, protected by insurance,[1] may welcome her action. In any event, it is difficult to to see how a personal injury action would disrupt tranquillity more than a property or contract action which is admittedly maintainable. The fear of fraudulent actions, and collusive actions where the husband is insured, furnishes equally tenuous basis for the majority view. There is opportunity for fraud and collusion in many legal proceedings, but our system of courts and juries is very well designed to seek them out and its presence clearly furnishes no just or moral basis for precluding honest and meritorious actions.

All of the thoughtful academic discussions have attacked the majority view. See 1 *Harper & James, Torts* 643, 646 (1956); *Prosser, supra* 670, 674; *Ford, "Interspousal Liability for Automobile Accidents,"* 15 *U. Pitt. L. Rev.* 357, 401 (1954); *Farage, "Recovery for Torts Between Spouses,"* 10 *Ind. L. J.* 290, 300 (1935); *McCurdy, supra,* 43 *Harv. L. Rev.* at 1052; *Albertsworth, "Recognition of New Interests in the Law of Torts,"* 10 *Cal. L. Rev.* 461, 471 (1922). Albertsworth pointed out long ago that it is incongruous to permit a wife to sue wherever her contract and property rights are involved and yet disable her from suing where her greater right—"the right of physical integrity"—is involved (*Albertsworth, supra,* 10 *Cal. L. Rev.,* at *p.* 478);

---

[1] See *Courtney v. Courtney, supra,* 87 *P. 2d,* at *p.* 668:
"A man pays for insurance to indemnify any person whom he injures by his careless driving, and if it is intended to except his wife from such indemnification, such intent can very easily be expressed in the contract." See also Kimball, C. J. dissenting in *McKinney v. McKinney,* 59 *Wyo.* 204, 135 *P. 2d* 940, 958 (1943):
"* * * there is no danger of domestic tranquillity being disturbed by an action for negligence by a wife against her husband who carries indemnity insurance. Negligence actions by wives against husbands, without any noticed exception, have involved automobile accidents, and have arisen since it has become a common practice for owners of such vehicles to carry insurance that serves the double purpose of protecting them, and compensating those whom they or their agents may injure. It is natural and commendable that an owner who is the head of a family should want this protection to extend to the members of his family."

more recently Harper and James noted that the metaphysical and practical reasons which prevented the wife's suit at common law are no longer applicable and that "sound policy and ordinary fairness" strongly support her right of action (*Harper & James, supra,* at *p.* 646); and Prosser has effectively summed up the matter in the following fashion:

"The courts which follow this majority view have buttressed their conclusion by inventing new arguments, not found in the early cases, for denying the remedy. Apart from *stare decisis* or judicial inertia, and the policy of strict construction of statutes changing the common law, it has been said that each spouse has remedy enough in the criminal and divorce laws—which obviously is untrue, since neither compensates for the damage done, or covers all the torts that may be committed. Stress has been laid upon the danger of fictitious and fraudulent claims, on the very dubious assumption that a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one; and likewise the possibility of trivial actions for minor annoyances, which might well be taken care of by finding consent to all ordinary frictions of wedlock—or at least assumption of risk! The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquillity if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it." *Prosser, supra* at 674.

The New Jersey reports contain many equity cases in which wives have maintained property and contract actions against their husbands. See, for example, *Calame v. Calame,* 25 *N. J. Eq.* 548 (*E. & A.* 1874); *Black v. Black,* 26 *N. J. Eq.* 295 (*Ch.* 1875), *Id.,* 30 *N. J. Eq.* 215 (*Ch.* 1878), reversed 31 *N. J. Eq.* 798 (*E. & A.* 1879); *Riker v. Riker,* 83 *N. J. Eq.* 198 (*Ch.* 1914); *Neubeck v. Neubeck,* 94 *N. J. Eq.* 167 (*E. & A.* 1922); *Fike v. Fike,* 3 *N. J. Misc.* 485 (*Ch.* 1925), affirmed 99 *N. J. Eq.* 424 (*E. & A.* 1926). *Cf. Turner v. Davenport,* 63 *N. J. Eq.* 288 (*E. & A.* 1901); *Collins v.*

*Babbitt,* 67 *N. J. Eq.* 165 (*Ch.* 1904). In the *Fike* case the wife prevailed in an action to compel her husband to deliver personal property which he had agreed to transfer to her; in the course of its opinion the court flatly rejected the husband's contention that it should not "entertain a suit of this kind where husband and wife are living together amicably." In the *Neubeck* case the wife was permitted to maintain an action to compel her husband to account for rents received by him from property owned by them as tenants by the entirety. In the *Turner* case a wife was permitted to maintain an action against her husband and another, as partners, for services rendered to the partnership. Justice Fort, speaking for the Court of Errors and Appeals in the *Turner* case, pointed out that the common law rule which precluded the wife's action was founded upon the theory that "husband and wife are one in law"; that with the passage of our married women's legislation the reason for the rule ceased; and that "when the reason for a rule ceases, the rule is no longer in force." [2]  *Cf. Hudson v. Gas*

---

[2] See *Albertsworth, supra,* 10 *Cal. L. Rev.,* at *p.* 479:

"When the reason for a legal rule ceases, the rule itself should no longer be kept in force (*cessante ratione, cessat lex*). The notion that the wife could not bring a tort action against the husband was, as is well known, based partly upon the idea that the husband and wife were a legal unity, and also upon the further theory, an inference drawn by courts in a barbarous age, that the wife was a mere chattel, and hence without any right of property or person. The beneficent legislation, beginning with the middle of the nineteenth century, sought to create a fundamentally new status for the married woman, and if the courts had, as a rule, recognized this revolution in the law, and given effect to it in their decisions, our law on this matter would not have been in such discord. But the courts, under the conception that common law incapacities were natural ones, and that the legislature really could not have meant to do the impossible—to change these inherited incapacities—read into these liberal statutes decidedly illiberal results. To the praise of some courts, under the controlling influence of former illiberal precedents, it must be said that they deprecate the fact that they are thus bound. And as already pointed out, other courts are decidedly breaking with the past, and reaching results in consonance with the emancipatory legislation regarding married women."

*Consumers' Association,* 123 *N. J. L.* 252 (*E. & A.* 1939); *Clement v. Atlantic Casualty Ins. Co.,* 13 *N. J.* 439 (1953).

Notwithstanding the foregoing, the New Jersey courts have adhered to the position that under common law principles a wife may not maintain a personal injury action against her husband. Thus in *Hudson v. Gas Consumers' Association, supra,* the Court of Errors and Appeals pointed out that "a wife may not have a suit for damages against her husband for his tort"; that "this is the common law rule"; and that "no statute has been enacted in this state that disturbs it." But recognition of the husband's immunity from suit as a common law rule which no statute has disturbed does not at all mean that the courts may not change it; on the contrary a well recognized aspect of the common law itself has been its capacity to alter common law doctrines which have outlived whatever usefulness they may have had and now retard rather than serve the interests of justice. See *State v. Culver,* 23 *N. J.* 495, 505 (1957), *cert.* denied, 354 *U. S.* 925, 77 *S. Ct.* 1387, 1 *L. Ed. 2d* 1441 (1957), where Chief Justice Vanderbilt said:

"One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his *Interpretations of Legal History* (1922) when he stated, 'Law must be stable, and yet it cannot stand still.' And what has been done in the past is but one of the factors determinative of the present course of our law—a truism which has not gone unrecognized among the great thinkers of the legal profession."

It must be remembered that the New Jersey Legislature never prohibited a wife from suing her husband. The common law did so but then proceeded to recognize many

equitable exceptions. When the Legislature enacted its 1877 revision it declared additional exceptions but it never sought to perpetuate for all times the prohibitory common law rule then in effect. Thus section 14 of the 1877 act simply provided that nothing *therein* shall enable a husband or wife to contract with or sue each other except as theretofore; and its current counterpart (*R. S.* 37:2–5) simply provides that nothing *in this chapter* shall enable a husband or wife to contract with or sue each other except as heretofore or as authorized by this chapter. Apart from the statutory changes, which were all designed to increase rather than delimit the wife's emancipation, this left the common law intact with its inherent capacity for later judicial alteration. See *Koplik v. C. P. Trucking Corp.,* 47 *N. J. Super.* 196, 199 (*App. Div.* 1957); *Editorial, "Our Law Progresses,"* 80 *N. J. L. J.* 576 (1957). In *Woodruff v. Clark & Apgar,* 42 *N. J. L.* 198, 200 (*Sup. Ct.* 1880), relied upon by the majority, Chief Justice Beasley noted that, apart from the statutory enlargements, section 14 left the husband and wife, insofar as their capacity to bargain was concerned, "on the ancient footing of the common law." In *Drum v. Drum,* 69 *N. J. L.* 557, 558 (*Sup. Ct.* 1903), Justice Dixon, citing section 14, stated that our statute "enlarging the legal rights of married women * * * expressly saves the common-law inability of husband and wife to sue each other." And in *Freitag v. Bersano,* 123 *N. J. Eq.* 515, 516 (*Ch.* 1938) Vice-Chancellor Fielder, citing *R. S.* 37:2–5, pointed out that, except to the extent that our statute enlarges the right of spouses to sue each other "the common-law rule in this respect prevails in this state."

The majority opinion has not sought to defend the continuance of the husband's common law immunity either on its original basis or on any currently acceptable reason or principle; nor has it dealt with the vital social and moral precepts which have been gradually eroding all of the common law immunities from tort responsibility for wrongful conduct; instead it has taken the position that the husband's immunity has become "part of our statutory law" and is

therefore irremovable except by statute. This imports into the statute prohibitory language which the Legislature has never expressed or implied. *Cf. Farage, supra,* 10 *Ind. L. J.,* at *p.* 300; *Albertsworth, supra,* 10 *Cal. L. Rev.,* at *p.* 472. Moreover, it does so in a case involving an antenuptial tort and suit, where any suggested policy consideration against the wife's action has even less force than when a postnuptial tort and suit are involved, and where other statutory provisions supporting the wife's action may be brought into play. See *R. S.* 37:2–12; *R. S.* 37:2–7. *R. S.* 37:2–12 provides, in part, that the personal property which a woman owns at the time of her marriage shall remain her separate property "as if she were a feme sole" and *R. S.* 37:2–7 provides, in part, that if a female plaintiff marries after she has instituted a legal action, the action shall not abate but shall proceed to final judgment in the name of the female "notwithstanding such marriage." Here the plaintiff's cause of action was her personal property (42 *Am. Jur., Property,* §§ 9, 26 (1942)) before her marriage, and her marriage to the defendant after she had filed her complaint should not have the legal effect of abating her action or preventing it from proceeding to final judgment. See *Curtis v. Wilcox,* [1948] 2 *K. B.* 474, 2 *All Eng. Rep.* 573 (C. A.); *Carver v. Ferguson,* 115 *Cal. App.* 2d 641, 254 *P.* 2d 44 (*Cal. D. Ct. App.* 1953); *Hamilton v. Fulkerson,* 285 *S. W.* 2d 642 (*Mo. Sup. Ct.* 1955). *Cf. Shirley v. Ayers,* 201 *N. C.* 51, 158 *S. E.* 840 (1931); *Apitz v. Dames,* 205 *Or.* 242, 287 *P.* 2d 585, 594 (1955).

In the *Curtis* case the plaintiff was a passenger in the defendant's car which collided with another car. She instituted a personal injury action and during the course thereof married the defendant. The Court of Appeals held that the action could proceed as one for the protection of her personal property and was not barred by the language in the English Married Women's Property Act that "no husband or wife shall be entitled to sue the other in tort" except as therein provided. Similarly, in the *Carver* case the court sustained the plaintiff's action for personal injuries

suffered in an automobile accident though she married the defendant after she had instituted her action but before it came to trial; the District Court of Appeals pointed out that the character of the plaintiff's personal property was fixed at the time of its acquisition and was not affected by her subsequent marriage. In the *Hamilton* case a wife's action against her husband for an antenuptial tort committed in an automobile accident was sustained by the Supreme Court of Missouri in a full opinion which found no legal principle or policy consideration against maintenance of the action. It is to be noted that in the *Curtis, Carver* and *Hamilton* cases the actions for antenuptial torts were held maintainable in jurisdictions which still decline to entertain actions for postnuptial torts. But see *Furey v. Furey,* 193 *Va.* 727, 71 *S. E. 2d* 191 (1952); *Patenaude v. Patenaude,* 195 *Minn.* 523, 263 *N. W.* 546 (1935).

Until today no reported judicial opinion in New Jersey (except the trial court's opinion in *Wolfer v. Oehlers,* 8 *N. J. Super.* 434 (*Law Div.* 1950), which was grounded entirely on the anachronistic "doctrine of identification") ever applied the husband's immunity to a case where the wife's tort claim accrued and her legal action was commenced before her marriage to the defendant. That is actually the only situation which now requires adjudication and it seems regrettable that the majority has concluded not to limit the common law immunity of the husband at least here where broad statutory provisions as well as considerations of rightness and fairness strongly support the position of the wife. She was injured on June 17, 1955 when Patrizio's car in which she was riding collided with a truck owned by the C. P. Trucking Corporation. In due time she filed her complaint charging that the accident was the result of the negligence of Patrizio and Angelo Nuzzo the driver of the truck. Answers were filed by Patrizio, Nuzzo and the Trucking Corporation, and if the trial had been brought on quickly the legal issue in the present case presumably would not have arisen at all. The plaintiff married Patrizio on June 2, 1956 and under the majority's holding she may now con-

tinue her action only against the Trucking Corporation and its driver. If the jury should find that Patrizio was exclusively at fault the plaintiff, though injured through the fault of another and without any fault on her own part, will have no recourse whatever for her medical expenses and other damages, and Patrizio's insurance carrier will have a complete windfall. I cannot bring myself to believe that these unjust consequences were ever contemplated by our Legislature or that they are compelled by any sound common law principle of continuing effect.

I would affirm the judgment of the Appellate Division.

*For reversal*—Justices HEHER, BURLING, FRANCIS and PROCTOR—4.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD and JACOBS—3.